JOHN E. ROY et al.

*v.*

D. J. BRITTAIN, JR., et al.

(*Knoxville*, September Term, 1956.)

Opinion filed October 5, 1956.

Sims Crownover and Watkins & Crownover, Nashville, for petitioners.

Mr. Chief Justice Neil delivered the opinion of the Court.

On September 3, 1956, the complainants, John E. Roy and others, presented to this Court a petition for writs of *certiorari* and *supersedeas* to review the action of Chancellor Joe M. Carden in refusing to issue writs of injunction to prevent the integration or desegregation, of the "Clinton High School," the same being a "public school" and a part of the public school system of Ten-

nessee. We declined to grant the relief prayed for and thereupon the complainants filed a lengthy petition to rehear. It is now before the Court for consideration.

The original bill charged that complainants were resident citizens of Anderson County, and that the defendant, D. J. Brittain, Jr., was the Principal of the Clinton High School in said county; that he, in violation of the segregation laws of Tennessee, was permitting the enrollment of twelve Negro students in the school.

It is charged in the bill that the segregation laws of Tennessee are in full force and effect, and that the statutes appropriating money for public schools of the State clearly contemplate the maintenance of segregated schools.

The charge is made that D. J. Brittain, Jr., Principal of the school, was made a defendant, along with others, who were members of the County Board of Education, in a law suit that was instituted in the United States District Court at Knoxville sometime prior to April 26, 1952,, wherein the said Court, on January 4, 1956, *McSwain v. County Board of Education*, D.C., 138 F. Supp. 50, 572, pronounced a final decree ''that desegregation as to high school students in [Anderson] county should be effected by a definite date and that a reasonable date should be fixed as one not later than the beginning of the fall term of the present year of 1956''. (The decree of the United States District Court was not made an exhibit to the bill, and hence is not a part of the present record. But we assume that the foregoing quoted language is substantially correct.)

We have the right to assume, as did the Chancellor, that the Principal of the school and the School Board

were complying with the aforesaid decree of the United States District Court.

 It cannot be doubted that the Judge of said Court was following the mandate of the Supreme Court of the United States in the case of *Brown v. Board of Education of Topeka,* and consolidated cases, 347 U.S. 483, 74 S.Ct. 686, 692, 98 L.Ed. 873, wherein it was held:

"We conclude that in the field of public education the doctrine of 'separate but equal' has no place. Separate educational facilities are inherently unequal. Therefore, we hold that the plaintiffs and others similarly situated for whom the actions have been brought are, by reason of the segregation complained of, deprived of the equal protection of the laws guaranteed by the Fourteenth Amendment. This disposition makes unnecessary any discussion whether such segregation also violates the Due Process Clause of the Fourteenth Amendment."

It was further held that these are *"class action"* and the ruling thus applies to all schools supported by public funds.

Regardless of what we may think of the soundness of the foregoing decision we are bound by it under the Supremacy Clause of the Federal Constitution U.S.C.A. Const. art. 6.

In the same case the Court requested further argument on the question of relief. Many able lawyers from a number of states argued the difficulties to be confronted in integrating the races in our public schools. 349 U.S. 294, 75 S.Ct. 753, 757, 99 L.Ed. 1083. The cases were remanded to District Courts to enter such orders and decrees "consistent with this opinion as are necessary

and proper to admit to public schools on a racially non-discriminatory basis with all deliberate speed the parties to these cases." In this latter opinion the Court incorporated by reference its former opinion "declaring the fundamental principle that racial discrimination in public education is unconstitutional, * * *. *All provisions. of federal, state, or local law requiring or permitting such discrimination must yield to this principle.*" (Emphasis ours.)

Now in the face of the foregoing express holding of the Supreme Court at Washington the complainants continue to insist that our segregation laws are "still *in full force and effect*". We respectfully disagree.

The complainants seek to evade the question by insisting that the Court did not decree a forced integration, but only there should be no *discrimination;* "that the State may avoid integration in many ways yet to be determined." The language of the Supreme Court, above quoted, is capable of but one meaning, viz. that all State laws on segregation must yield to the paramount authority of the Federal Constitution.

The complainants in their original bill expressly recognized the fact that the enrollment in the Clinton High School of the twelve Negro students was in compliance with the mandate of the United States District Court. Neither Mr. Brittain, the School Principal, nor the School Board could evade it. Any refusal to admit their enrollment would have been an act of discrimination in plain violation of the Federal Court's decree. While it is argued by counsel that the Board of Education had not ordered integration of the school, and Brittain was acting without authority, we think the silence of the Board amounted to a ratification of the action of the

school Principal in his effort to comply with the decree of the Federal Court. Moreover the Board was a party defendant in the suit pending in the United States District Court. The decree, directing the enrollment of Negro students, was directed to the Board as well as the school Principal. Each and every defendant was required to take notice of it.

■ Now we are asked, as was the Chancellor, to issue an injunction to "restrain and enjoin" D. J. Brittain, Jr., Principal of the Clinton High School, from complying with the aforesaid order of the United States District Court.

We know of no case, and none has been cited by counsel, in which the courts of this State may enjoin the enforcement of a Federal District Court decree that is based upon the express mandate of the Supreme Court of the United States. "It is a well-established general rule that the state courts have no authority to enjoin proceedings in the Federal courts." 28 Am.Jur., Section 217, p. 400; 14 Am.Jur., Section 258, p. 453.

■ In the instant case the Federal Court had first acquired jurisdiction of the subject matter and the parties to the controversy. This being admittedly true, that court "retains its jurisdiction to the exclusion of all other Courts." See Am.Jur., *supra*, also 21 C.J.S., Courts, sec. 529, pp. 809-811.

■ Contention is next made that "The funds of a State appropriated for Segregated Schools cannot be used or expended for racially-mixed schools." The foregoing contention rests solely upon the hypothesis that the laws of this State forbidding racially mixed schools are in full force and effect, and it was error for the Chancellor to refuse to enjoin certain county officials from

disbursing State funds for maintaining public schools in Anderson County, and especially Clinton High School.

The plain fallacy of this insistence is that the Segregation Statutes referred to *are not now in full force and effect*, the same having been declared unconstitutional in *Brown v. Board of Education, supra.*

The purpose of the complainants' bill is to invoke the jurisdiction of the Chancery Court to enjoin the named officials of Clinton High School from complying with the decree of the United States District Court, or in the alternative, to enjoin State and County officials from disbursing funds appropriated for the operation of said school. Either method would completely satisfy the prayer of the bill.

Complainants insist that conceding that our segregation laws are now unconstitutional, nevertheless State money cannot be lawfully spent for the support of desegregated schools. If we should consider this insistence as valid, and issue the writ as prayed for, the result would be the closing of Clinton High School until the State of Tennessee could either adopt a policy of operating its public school system contrary to the Supreme Court decision in *Brown v. Board of Education, supra,* or abandon the present system of public education. We are unwilling to enter a decree which would have the undoubted effect of closing Clinton High School, and possibly other public schools in Anderson County.

In *Constantian v. Anson County,* 244 N.C. 221, 93 S.E. 2d 163, 167, the Supreme Court of North Carolina, expressing a similar view, held:

"If plaintiff's contention were adopted, all authorized (unissued) bonds for school plant facilities, as well as all previously authorized special tax supple-

ments within administrative units, throughout the State, would be invalidated. Applicable legal principles impel the opposite conclusion.

\* \* \* \* \* \*

"In the interpretation of the Constitution of the United States, the Supreme Court of the United States is the final arbiter. Its decision in the Brown case is the law of the land and will remain so unless reversed or altered by constitutional means. Recognizing fully that its decision is authoritative in this jurisdiction, any provision of the Constitution or statutes of North Carolina in conflict therewith must be deemed invalid.

"The Florida Supreme Court, in *Board of Public Instruction v. State,* Fla., 75 So.2d 832, and the Supreme Court of Oklahoma, in *Matlock v. Board of County Commissioners,* Okl., 281 P.2d 169, on similar but somewhat variant factual situations, have reached conclusions generally in accord with the decision of this Court."

See also *Doby v. Brown,* 4 Cir., 232 F.2d 504, "Race Relations Law Reporter", Vanderbilt University Press, Vol. 1, No. 4, August, 1956, page 664.

The foregoing authorities are conclusive of the issue involved in the present controversy. For all of the foregoing reasons, and upon the authorities referred to in this opinion, we hold that the Chancellor was correct in refusing to grant the writ of injunction as prayed for in the original bill.

The petition to rehear is denied.

TOMLINSON and BURNETT, JUSTICES, concur.

PREWITT, JUSTICE, concurs in results.

SWEPSTON, JUSTICE, did not participate, since he was

absent at the time the original petition was presented to the Court.

PREWITT, JUSTICE (concurring in result).

On September 3, 1956, at Nashville, this Court denied the writs on the ground that we had no power to override the decision of the Supreme Court of the United States in the case of *Brown v. Board of Education of Topeka* and consolidated cases, 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873. Following this denial a petition to rehear was filed.

The majority opinion is based on this petition to rehear, and the writer concurs in results only in the majority opinion. I think the petition to rehear should be disposed of by simply overruling the petition to rehear for the same reason we gave on September 3, 1956, when we denied the writs.