Obie **ELIE** et al., Plaintiffs-Appellants,

v.

Athens Clay **PULLIAS** et al., Defendants-Appellees.

No. 18402.

United States Court of Appeals
Sixth Circuit.

Feb. 26, 1969.

Fred D. Gray, Montgomery, Ala., for appellants; Avon N. Williams, Jr., of Looby & Williams, Nashville, Tenn., Gray, Seay, Langford & Pryor, Montgomery, Ala., on brief.

Hugh C. Howser, Nashville, Tenn., for appellees; Rebecca Thomas, Nashville, Tenn., on brief.

Before CELEBREZZE and COMBS, Circuit Judges, and McALLISTER, Senior Circuit Judge.

COMBS, Circuit Judge.

The plaintiffs-appellants brought this class action to enjoin the president and

board of directors of Nashville Christian Institute (NCI) from dissolving NCI and conveying its assets to the David Lipscomb College Foundation; also to enjoin the foundation and David Lipscomb College from receiving or disposing of such assets. Plaintiffs are Negro members of the Church of Christ and alumni, patrons, and students of NCI. The district court, after hearing, dismissed the complaint.

NCI was conceived and incorporated in 1941 as a school and general welfare corporation by Negro members of the Church of Christ. The curricula included grades one through twelve. Throughout its history the school maintained its religious affiliation and many of its graduates went on to serve as ministers of Negro congregations of the Church of Christ. The student body was predominantly Negro although some members of its board of directors and faculty were white and white students were not officially barred.

In 1943, a white man, A. M. Burton, became interested in NCI and was active in the management of the school's affairs until his death in 1966. During this period he made numerous contributions of money and property to the school. At Mr. Burton's suggestion, the composition of NCI's board of directors was changed so as to include six white members and only four Negroes. Burton became chairman and held this position until his death.

David Lipscomb College is also located in Nashville and is affiliated with the Church of Christ. It maintains a kindergarten, grades one through twelve, and a four-year liberal arts college. The David Lipscomb College Foundation owns the assets dedicated to the college and provides for its operation. Mr. Burton was also a substantial benefactor to David Lipscomb and maintained close ties with that institution. In fact, most, if not all, of the white directors of NCI were closely connected with the college or the foundation. Athens Clay Pullias, president of David Lipscomb and a defendant in this action, succeeded Burton as chairman of NCI's board of directors.

In spite of their interlocking directorates and affiliation with the same religious organization, both David Lipscomb and NCI for much of their history have been racially segregated. NCI was attended by Negroes and David Lipscomb by whites. It was not until 1956 that the Tennessee statute requiring separation of the races in schools was struck down by the Tennessee courts. Roy v. Brittain, 201 Tenn. 140, 297 S.W.2d 72. Moreover, David Lipscomb continued to operate de facto as a racially segregated school until 1964.

In recent years, NCI became financially hard-pressed. The number of students declined from a high of 683 in the 1947–48 school year to only 138 in 1967. As found by the district court, the physical plant was woefully inadequate both as to land area and buildings; teachers' salaries were little more than one-half of those paid in the Nashville public schools. NCI's elementary school was never approved by the State of Tennessee and the high school received only year-to-year approval. After 1964, no attempt was made to secure approval of the high school, apparently because the deficiencies were too great.

In February, 1967, NCI's board of directors decided to close the school and liquidate its assets. Several possibilities for disposition of the assets were presented and considered. These included (a) ministerial training, (b) orphan's home, (c) day care for children of working mothers, and (d) use of the funds for the purpose of educating Negroes in other institutions. The board finally decided that the assets should be transferred to the David Lipscomb College Foundation as part of a Burton-Keeble Scholarship Fund. This fund was earmarked to provide scholarships for qualified Negroes who wanted to attend David Lipscomb College. The scholarships were available only on the college level; no elementary or high school scholarships were provided.

Plaintiffs' principal criticism of the board's action is based on two grounds: first, the scholarship fund, being limited to college students, does not meet the need for high school educated ministers such as NCI formerly supplied; and second, most Negroes will be reluctant to attend David Lipscomb College due to its long history of segregation and its present status, it is said by plaintiffs, of being only tokenly integrated. With these underlying objections, plaintiffs alleged three grounds for injunctive relief: (1) the board of directors of NCI abused their fiduciary duty in undertaking the transfer of assets; (2) the transfer constituted an illegal diversion of corporate property under Tennessee law; and (3) the dissolution and transfer constituted a violation of the due process and equal protection clause of the Fourteenth Amendment.

The case is not free from difficulty. We can well understand the emotional trauma experienced by plaintiffs at the decision to close NCI. The emotional attachment to an institution of this kind lies close to the hearts of those who have sacrificed to give it birth and sustenance. It is apparent though that NCI was faced with a financial crisis. All available evidence was that it would continue to sink deeper into the morass of debt, declining enrollment, low teachers' salaries, and lack of accreditation. Under the circumstances, the board had a duty to take affirmative action.

■■ Under Tennessee law, a general welfare corporation may be dissolved and its assets transferred to another general welfare corporation, "provided that [the] assets and property * * * be used by the grantee for purposes similar to those of the conveying corporation." T.C.A. § 48–1120. It was said by the Supreme Court of Tennessee in Southwestern Presbyterian Univ. v. Clarksville, 149 Tenn. 256, 270, 259 S.W. 550, 554 (1923), "The exercise of this broadly conferred power may not properly be restrained by the courts aside from fraud or evidence of corruptly induced manipulation."

■ Plaintiffs argue that, since a majority of the directors of NCI were also officers or directors of David Lipscomb, a conflict of interest existed and consequently the board's decision was tainted. The general rule, and that of Tennessee, is that in transactions between corporations with interlocking directorates the burden is upon those seeking to uphold the transaction to show absence of fraud or unfairness. Geddes v. Anaconda Mining Co., 254 U.S. 590, 41 S.Ct. 209, 65 L.Ed. 425 (1921); Harriman Welding & Supply Co. v. Lake City Lightweight Aggregate Corp., 46 Tenn.App. 529, 330 S.W.2d 564 (1959).

■ Applying the foregoing standard to the facts of this case, we think that defendants have sustained their burden. We are unable to find any breach of fiduciary duty. As was said by the district court, "The evidence shows nothing more than that the Board of Directors made a considered judgment. It may not have been the only judgment which could have been made, it may not have been the best judgment which could have been made, but that is not the question before this Court."

The question before us is whether there is any evidence of fraud, unfairness, or self-dealing by the NCI board of directors. We hold there is not. We conclude therefore that the action of the board of directors should be sustained for the reasons stated in the opinion of the district court, as supplemented by the observations made here. We are directing that the case be retained on the docket of the district court for a reasonable time in order to insure that the purposes of the scholarship fund are properly carried out by the David Lipscomb College Foundation.

The judgment is affirmed.