COTTON v. PHILLIPS.

*Incompatible offices—Mandamus.*

The offices of prudential committee and auditor of a school district are incompatible. A person who is elected to both offices at the same meeting, and accepts the latter, thereby declines the former.

CARROLL COUNTY.

PETITION to the superior court for a writ of *mandamus*. The petitioner represents that on March 31, 1875, he was and still is an inhabitant, legal voter, and tax-payer in school district No. 19, in Wolfe-

---

borough ; that at a legal meeting of the voters of said district, held on March 31, 1875, he received a plurality of the votes cast on the second ballot for member of the prudential committee of said district, and was duly elected, and should have been declared elected, and ought now to be in possession and enjoyment of said office ; that on April 1, 1875, he took the oath of office, and filed a certificate thereof with the clerk of said district ; that at subsequent ballotings at said meeting the defendants were severally duly elected as members of said committee, and severally took the oath of office, and that they refuse to recognize the petitioner as a member of said committee,—by reason whereof he is deprived of the rights and privileges of said office, and is greatly aggrieved thereby. Wherefore he prays that he may be declared duly elected a member of said committee, and for a writ of *mandamus* to issue, commanding the defendants to recognize him as a member of said committee, for said district, for the current year.

Phillips—protesting that the petition is informal and insufficient ; that the relief prayed for is defectively set forth ; that he is not bound to answer at this time ; that the petition should have been made returnable at the next term instead of at a subsequent day of the present term ; and that the order of notice and return thereon are defective— answered, setting forth the proceedings of the meeting of the district, held March 31, 1875, and claimed that the petitioner, by participating in the balloting when one William H. Furber was declared elected a member of said committee, and allowing himself to be voted for as a candidate at said balloting, without objection or protest, had waived his own election to said office on the second ballot. The answer also sets forth, that at the same meeting, after said Furber was declared elected a member of said committee and had taken the oath of office, said Cotton was elected to the office of auditor, which he thereupon accepted, and took the oath of office ; that the duties of said two offices are wholly inconsistent ; and that said Cotton, by accepting the office of auditor, in fact declined the office of prudential committee.

*Yeaton* has filed no answer.

The cause was submitted upon the following evidence :

At the annual meeting of school district No. 19, in Wolfeborough, holden March 31, 1875, Buel C. Carter was elected moderator of said district, and took the oath of office, and presided throughout the meeting. Alexander H. Durgin was duly elected clerk of said district, and was duly qualified in open meeting. Upon the first balloting for prudential committee Buel C. Carter received a plurality of the votes, but the moderator declared there was no choice. Upon the second balloting, Joseph L. Avery had one vote, Buel C. Carter one vote, Charles F. Parker two votes, Oliver R. Yeaton four votes, William H. Phillips eight votes, and Isaac W. Cotton nine votes, being a plurality,—but the moderator declared there was no choice.

On the third balloting, Carter had one vote, Yeaton one vote, Parker three votes, Cotton eleven votes, and Phillips eleven votes, and the moderator declared there was no choice.

On the fourth balloting, Cotton had eleven votes, and Phillips eighteen votes, and was declared elected, and took the oath of office in open meeting.

On the fifth balloting, Cotton had two votes, John G. Cate two votes, William W. Furber four votes, Henry W. Furber eight votes, and Oliver R. Yeaton nine votes, and the moderator declared there was no choice; but, on being reminded that a plurality of votes only was necessary to elect school district officers, said Yeaton was declared by the moderator elected, who thereupon, in open meeting, took the oath of office. An examination was then made of the clerk's minutes of the previous ballotings by the moderator, clerk, John G. Cate, and others, to ascertain what persons had received a plurality of votes, and it was discovered that said Carter had received a plurality of votes on the first balloting, and was thereupon declared elected; but he at once declined the office. It was not then discovered by any one that said Cotton had received a plurality of votes on the second ballot, nor did Cotton then, or at any time before the adjournment of the meeting, so claim. After some discussion, it was voted to elect another member of the prudential committee. The sixth balloting resulted as follows: Carter had two votes, Cotton ten votes, and Henry W. Furber seventeen votes, and was declared elected, and took the oath of office in open meeting without objection from any one. After voting to raise the sum of $50 to pay rent of school-room, it was voted to choose two auditors for the ensuing year. On the first balloting, John G. Cate was elected by a plurality of votes, but declined the office. Upon the second balloting, Isaac W. Cotton was unanimously elected, and took the oath of office in open meeting. John W. Sleeper was also elected auditor, and was duly qualified in open meeting.

After the business of the meeting had been transacted, it was suggested by some one that the plaintiff, Cotton, had received a plurality of votes on the second balloting for prudential committee; but the full number having been declared elected, and having been sworn in, the moderator declined to declare him elected.

*A. & F. A. Fowler*, for the plaintiff.

*Copeland* and *B. C. Carter*, for the defendants.

SMITH, J. It is unnecessary to inquire whether Cotton or Cate knew or ought to have understood that Cotton was elected one of the prudential committee on the second ballot. It is a fact about which there is no dispute, that, after the ballotings for prudential committee were over, Cotton was elected one of the auditors, and accepted the office without objection, and was sworn in before the adjournment. There is no question but that he was elected one of the prudential committee on the second ballot; but no one present at the time recollected that a plurality of votes elected. When at a subsequent stage of the meeting it was suggested that a plurality only was necessary to elect, it seems

no one discovered that Cotton was elected, although it was discovered that Carter had been elected on the first balloting. Some of the evidence taken tends to show that the election of Cotton was discovered later in the evening, and that Cotton and Cate had such notice of it, that the failure of Cotton to claim the office can be explained only upon the ground that he waived his right to the office and acquiesced in the action of the meeting. But I think the evidence, on the whole, shows that he did not claim the office because he did not know that he had been elected, till after the adjournment; and no one present seems to have learned the fact till the business of the meeting had been completed, and the meeting was upon the point of adjourning.

Nor is it necessary to inquire whether Cotton, although he was ignorant of the provision of the law that plurality would elect, should be charged with knowing what the law and his rights were. Applying the rule *ignorantia legis*, &c., he would be charged with knowledge of his election, and, having failed seasonably to claim the office, his conduct is equivalent to a declination, and to acquiescence in the election of Furber.

But there is a view of this case that is decisive. Cotton accepted the office of auditor, and was qualified in open meeting by taking the oath of office. This was done with the acquiescence of all present. By so doing he has excluded himself from claiming the office of prudential committee. The two offices are clearly incompatible. The prudential committee are charged with the administration of the affairs of the district. They are the sole custodians of the money apportioned to the district for schooling. They make contracts with teachers in their discretion, and disburse the funds. The duties of an auditor are to examine the accounts of the prudential committee, and their vouchers, and report whether they are properly cast and supported, and whether the money has been legally expended. If the same person could hold both offices, he would in fact sit in judgment on his own acts. If there should be any irregularity or misappropriation of the funds, of course the opportunity would be afforded for concealing it from the district. The object of electing auditors is, that the district, through an independent tribunal, may have the additional assurance that its money has been properly accounted for and its affairs properly managed. When the two offices are held by the same person, this guaranty is, in a great measure, lacking. I am therefore of opinion that Mr. Cotton, by accepting the office of auditor, disqualified himself from holding that of prudential committee. This result makes it unnecessary to examine the objections raised to the sufficiency of the petition.

CUSHING, C. J. I fully agree with the results reached by my brother SMITH; but I desire, also, to express my very great doubts whether, if the petitioner had not accepted the inconsistent office, he ought to be permitted in this way to upset the doings of the district meeting. Assuming that he did not know that the election was by plurality until after the election of Furber and the dissolution of the meeting, still I

think that such ignorance, in a matter so easy to ascertain, ought to have the effect of a waiver of his right. It is admitted on all hands that there was no intentional wrong,—that the whole difficulty was the result of an honest mistake; but I think that after making that mistake, and acquiescing in the doings of the meeting, he ought not now to be permitted to object.

These considerations assume greater importance when we consider the nature of this particular case. This election took place in March, 1875, and the decision was reached in December. What has been done meanwhile? Has the district lost its schooling for the year? or has the party in possession of the office been holding it at his peril? If these defendants have mistaken their rights or duties, would that mistake have excused them from the consequences of this proceeding? If their ignorance of the law will not excuse the defendants from these consequences, why should the plaintiff be permitted to take advantage of his ignorance of the law?

LADD, J., concurred.

*Petition dismissed.*