KELLY *v.* WOODLEE.

(*Knoxville*, September Term, 1939.)

Opinion filed November 25, 1939.

182

SHEPHERD, CURRY & LEVINE, of Chattanooga, for appellant.

J. ROY HICKERSON, of Winchester, for appellee.

MR. JUSTICE CHAMBLISS delivered the opinion of the Court.

The bill seeks a declaration that complainant is the lawful holder of the office of District Attorney-General for the Eighteenth Circuit. He claims title to the office by virtue of an appointment on January 13th, 1939, by the then Governor, Gordon Browning. The defendant claims title to this office under an appointment on January 16th, 1939, by the then Governor, Prentice Cooper, he having been inaugurated on that day, succeeding Governor Browning. The Chancellor sustained a demurrer and dismissed the bill. Complainant appeals.

The disputed office was formerly held by Honorable A. T. Stewart, who was elected by popular vote in November, 1938, to the office of United States Senator. The Senate was not then in session, and did not convene until January following, and Stewart was not presented and sworn and admitted to membership by the Senate, until January 16th, 1939. Thereupon his resignation was presented to the newly inaugurated Governor Cooper, who, thereupon, appointed and commissioned the defendant Woodlee to the office in dispute.

When did a vacancy take place in this office? This is the determinative question. The theory of the complainant Kelly is that the office of Attorney-General, theretofore held by Stewart, was automatically vacated upon the election of Stewart in November to the office of Senator. The basis for this insistence is (1) our constitutional provision, "Nor shall any person in this State hold more than one lucrative office at the same time," (Article II, Section 26) ; and (2) that, giving application to this provision, Stewart could not "hold" at the same time both of these "lucrative" offices of Attorney-General and United States Senator. This proposition is conceded. It is conceded that these offices are both lucrative and that both cannot be held at the same time.

184

But it is said for the defendant Woodlee that Stewart continued to "hold" the office of Attorney-General until January 16th, when he was inducted into the office of Senator, at which time he first began to "hold" that office; that whenever elected to the office, he could not be said to "hold" the office until his acceptance of it, and his acceptance by the Senate into its membership, at which time he was sworn and from which time, and not before, he began to function, or was empowered to function, in such office.

It is urged for complainant that, by virtue of an act of Congress, one who is elected to the office of Senator becomes entitled to draw the salary of that office from the date of his election, during such time as may intervene between such election and the meeting of Congress and his formal induction into the office; that unless, therefore, his election is taken to be the date of his vacation of the lucrative office he then may be holding, he would be entitled to draw two salaries from two lucrative offices at the same time, in contravention of the Constitution. Also, it is alleged that Stewart did not perform any duties as Attorney-General after his election in November, and that this evidenced an abandonment of that office.

But it is not shown here that Stewart accepted or drew any compensation as Senator during this interim between his election and induction into the office of Senator, some sixty days later, but to the contrary; and that Stewart performed no duties as Attorney-General during this comparatively short time—which included the Christmas holidays—cannot be held to have constituted an abandonment, as suggested, of that office. Especially is this so in view of the charges of the bill to the effect that he designedly and purposely (and as al-

leged improperly) held on to the office of Attorney-General until a change in the State administration in January, thus seeking to give to the incoming Governor the power of appointment of his successor. Clearly, then, no element of intention to abandon the office can be found, generally held to be an essential. 46 Corpus Juris, 980, Section 137.

It is conceded that under our holdings in this State acceptance of a second lucrative office will vacate the former office. The recent case of *Caldwell* v. *Lyon*, 168 Tenn., 607, 80 S. W. (2d), 80, 100 A. L. R., 1152, clearly so holds and cites and reviews the authorities to this effect in this and other jurisdictions. But there must be this acceptance. We are constrained to agree with the Chancellor that we have no acceptance shown here, until Stewart appeared before the bar of the Senate and presented himself to that body for admission as a member.

Various reasons suggest themselves, aside from that alleged and condemned in the bill, why one holding a lucrative office when elected to the Senate, or House of Representatives, should hold to what he has, until assured of getting that to which he has been chosen, but has not yet secured and may not ever secure. For example, it is conceivable that a contest of the election may be threatened, as is well known frequently occurs; and charges of vitiating irregularities, election law violations in the expenditure of campaign funds, or otherwise, may be made and pressed upon the attention of the Senate. The Senate is the absolute and exclusive judge of the qualifications of its members and the validity of their elections. The part of prudence would suggest that the incumbent of the highly honorable and lucrative office of District Attorney-General should hold fast to it until all

doubt has passed and he has been accepted by the Senate into its membership.

But one case which appears to be directly in point is brought to our attention, *United States* v. *Dietrich* (C.C.), 126 F., 676, 682. While that was a criminal proceeding, guilt under the count of the indictment considered turned on when the defendant, elected to the United States Senate in March 1901, became a member of that body, so that he could be said to be holding that office. Dietrich, while serving as Governor of Nebraska, was elected, in March, 1901, to the United States Senate. He held the office of Governor until May 1st, when he resigned. The Senate was not in session and he was not inducted into that office until the Senate met in December. The Court, in an elaborate opinion citing Court and official authorities, holds that he did not become a member, was not holding the office of Senator, until his induction and admission to the Senate in December. We quote from that opinion the following excerpts which apply equally to the instant case:

"The defendant was not admitted to a seat in the Senate and did not enter upon the discharge of the duties of that office until December 2, 1901. Not until that day did the Senate consider or act upon his election, credentials, and qualifications. Until then it was not known, and could not have been, in the absence of an earlier session of the Senate, whether his election, credentials, and qualifications would be deemed by the Senate, the sole and exclusive judge, to be such as to entitle him to membership in that body. Immediately following the favorable action of the Senate upon his election, credentials, and qualifications, the defendant took the oath of office as a senator, which was an assumption of the duties of that office, but until then he had not accepted the

office and was not obligated to its acceptance. Until then it was optional with him to accept or decline; and if on December 2, 1901, he had exercised that option by declining instead of accepting, he would not have been a senator at all under the election of March 28, 1901.''

Again:

''While the two offices of governor of a state and senator in Congress cannot be held by the same person at the same time, being a senator-elect is not being a senator, and hence the same person may be governor of a state and a senator-elect at the same time without holding two offices. This is the position which has been uniformly taken by the House of Representatives under that provision of Const. art. I, sec. 6, which declares: 'No person holding any office under the United States shall be a member of either house during his continuance in office.' The matter was extensively considered during the Fifteenth Congress. Samuel Herrick, while holding the office of United States District Attorney, was elected to the House of Representatives in that Congress in October, 1816, and after his election continued to hold the office of District Attorney until within two days of the beginning of the first session of that Congress in December, 1817, when he resigned it preparatory to accepting membership in the House of Representatives. It was ruled that he was not a member in advance of the organization of that body, *or in advance of his admission thereto*, and therefore that there had been no concurrent holding of two incompatible offices.''

The following language is quoted in the opinion in the Dietrich case from the report of the Committee on Elections of Congress in the contested election case of Clarke & Hall:

'' 'Our rule in this particular is different from that of

188

the House of Commons. It is also better, for it makes our theory conform to what is fact in both countries—that the act of becoming in reality a member of the House depends wholly upon the will of the person elected and returned. Election does not, of itself, constitute membership, although the period may have arrived at which the congressional term commences. . . Neither do election and return create membership. These acts are nothing more than the designation of the individual, who, when called upon in the manner prescribed by law, shall be authorized to claim title to a seat. This designation, however, does not confer a perfect right; for a person may be selected by the people, destitute of certain qualifications, without which he cannot be admitted to a seat. . . . So, also, if a person duly qualified be elected and returned, and die before the organization of a House of Representatives, we do not think he could be said to have been a member of that body, which had no existence until after his death.' ''

 Since the case before us is *quasi*-Federal, the decision of this Federal Court is entitled to great respect, aside from the force and soundness of its reasoning.

 We are of opinion that no vacancy existed in the office of District Attorney General until Stewart, the incumbent, was received into the Senate, sworn and entered upon the duties of that office on the 16th day of January, 1939. It results that the decree of the Chancellor dismissing the bill is affirmed.

ON PETITION TO REHEAR.

MR. JUSTICE CHAMBLISS delivered the opinion of the Court.

A petition to re-hear in this cause calls attention to the omission of this Court to deal specifically in its original opinion with two propositions which it is said are "material federal questions which are essential for inclusion in a petition for *certiorari* to the United States Supreme Court in the event a finding adverse to the petitioner is made."

The original opinion did not deal specifically with these questions because the Court was not of opinion that it was necessary to do so in order to dispose fully of the determinative issue involved, to-wit, when a vacancy first occurred in the office of District Attorney-General. The questions brought to the attention of the Court in this petition relate to the vacancy in the office of United States Senator, a matter with which this Court was not concerned.

The bill in the cause sought a declaration as to which of the parties to the proceeding was legally entitled to hold the office of District Attorney-General of the Eighteenth Circuit. The right to hold this office as between these parties turned upon when a vacancy first occurred in that office. In arriving at a decision as to that date or time, it was not necessary for this Court to go further and decide when a vacancy occurred in the office of United States Senator, or who was entitled to receive compensation from the United States between the date of the election in November, 1938, and the date when Senator Stewart was sworn into the Senate, in January, 1939. We conceive these to be questions apart from the controversy presented in this cause and properly for the consideration of Congress and the Federal Courts. The pressure on this Court incident to the decision of questions necessary for decision, precludes excursions

beyond this limit, where expressions of opinion fall into the fertile field of dicta.

The petition must be denied.