[Civ. No. 12057. First Dist., Div. One. Oct. 27, 1942.]

THE PEOPLE ex rel. A. E. BAGSHAW, Appellant, v. R. A. THOMPSON, Respondent.

A. E. Bagshaw, in pro. per., Earl Warren, Attorney General, and James H. Oakley, Deputy Attorney General, for Appellant.

Natalie J. Holly for Respondent.

WARD, J.—This is an action in quo warranto brought by plaintiff under the provisions of section 803, Code of Civil Procedure, to remove the defendant from the office of Director of the Golden Gate Bridge and Highway District on the

ground that such office is incompatible with that of Supervisor of Marin County also held by him.

The Golden Gate Bridge and Highway District, a public corporation, is comprised of six contiguous counties, of which Marin is one, and was organized primarily for the acquisition and construction of bridges, approaches thereto, etc. (Deering's Gen. Laws, Act 936; Stats. 1923, ch. 228, p. 452.) The act creating it also provides for the issuance and retirement of bonds, the levying of taxes and the collection of tolls. The directors of the district are appointed by the boards of supervisors of the counties comprising the district, their number being based upon the population of the respective counties.

Defendant Thompson was elected to the office of supervisor for the county of Marin on the 30th day of August, 1938, for a term to commence on January 2, 1939. Unless a different time is specially prescribed, the oath of office must be taken, and a bond (if required) filed, within thirty days after notice of election. (Pol. Code, §§ 907, 947.) Thompson complied with these requirements by taking and filing the oath on September 21, 1938, and filing the bond on September 24, 1938. On November 14, 1938, the Board of Supervisors of the County of Marin appointed him to the office of Bridge Director for a term to commence on November 24, 1938. He took the oath and assumed the duties of such office on the same date. Thereafter, on January 2, 1939, he entered upon his duties as supervisor.

The trial court held that the two offices are incompatible; that Thompson became the legal holder of the office of supervisor on the 24th of September, 1938, when he qualified therefor, the term to commence in the future; that by thereafter qualifying for and accepting the office of director, he forfeited that of supervisor for the term not yet commenced. The trial court concluded that he was not usurping the office of director, as contended by plaintiff, but that he was legally entitled to such office, and, inasmuch as the complaint questioned his right to the office of director only, ordered judgment for him and against plaintiff. From this judgment the plaintiff appeals.

Appellant contends, as the court found, that the two offices are incompatible; that by entering upon the duties of the office of supervisor on January 2, 1939, respondent vacated

and forfeited that of director. Respondent's position is that the two offices are not incompatible, but is in accord with appellant that, if they are, the office vacated is that of director.

■ Public policy requires that when the duties of two offices are repugnant or overlap so that their exercise may require contradictory or inconsistent action, to the detriment of the public interest, their discharge by one person is incompatible with that interest. In determining incompatibility, the permanency of the position, the power granted and the functions actually performed should be considered. (*People ex rel. Chapman* v. *Rapsey*, 16 Cal.2d 636 [107 P.2d 388] and cited cases.) In the Rapsey case, quoting from 46 Corpus Juris, 941, the court (p. 642) said: " 'At common law the holding of one office does not of itself disqualify the incumbent from holding another office at the same time, provided there is no inconsistency in the functions of the two offices in question. But where the functions of two offices are inconsistent, they are regarded as incompatible'." The court further said: " 'If one office is superior to the other in some of its principal or important duties, so that the exercise of such duties might conflict, to the public detriment, with the exercise of other important duties in the subordinate office, then the offices are incompatible'." The same principle has received approval in *People* v. *Garrett*, 72 Cal.App. 452 [237 P. 829].

*In People ex rel. Moody* v. *Carter*, 12 Cal.App.2d 105 [54 P.2d 1139], relied upon strongly by respondent, it was held that William H. Carter, the mayor and commissioner of public safety of the city of Santa Monica was eligible as representative thereof to the directorate of the Metropolitan Water District, of which the city was a part, upon the theory that the positions were not incompatible. Such holding was based primarily upon the decision in *McDonnell* v. *Improvement District*, 97 Ark. 334 [133 S.W. 1126], referring to which the court in the Carter case states: "The eligibility of Cunningham to act on the board was attacked squarely on the ground that the city council could not appoint one of its own members to the board." The parties to this appeal do not raise the question of whether, regardless of the compatibility or incompatibility of the two offices, public policy prohibits a board having power of appointment to another office to exercise that power by appointing one of its own members. In so far as the Carter case is concerned, we may say that the

dictum above quoted is not in harmony with the weight of later authority.

In *Commonwealth* v. *Major,* 343 Pa. 355 [22 A.2d 686, 688-689], the court said: "We have no difficulty in reaching our conclusion, and are unanimously of opinion that well-established public policy prohibits respondent and his colleagues from using their official appointing power as councilman of the City of Beaver Falls to appoint themselves members of the Board of the Authority. This court said, as early as 1803, in *Commonwealth* v. *Douglass,* 1 Bin. 77, 84: 'One having a discretionary authority to appoint a fit person to a public office appointing himself seems a solecism in terms; and it cannot be deemed the fulfilment of his duty.' For this reason, if for no other, the learned court below properly ousted respondent and the other three councilmen from membership on the Board of the Authority. . . . In this connection, we said, in *Commonwealth* v. *Raudenbush,* 249 Pa. 86, 88, 89 [94 A. 555, Ann.Cas. 1917C, 517] : 'A member of a municipal council is disqualified from voting in proceedings involving his personal or pecuniary interest. 20 Am. & Eng. Ency. of Law (2d ed.) 1214. . . . It is against public policy for a representative of a municipality to vote in its legislative body on any matter which affects him individually. . . . A councilman cannot vote on any contract or measure in which he is pecuniarily interested. This was the rule of the common law, and statutes have been enacted in most jurisdictions forbidding such voting. A councilman cannot act for the municipality and at the same time act for himself individually. He cannot serve two masters at the same time. He is a trustee for the municipality and he may not deal with himself in any matter which concerns it.' [Citing cases.]" (See Cal.L.Rev., vol. 30, p. 686.) In view of the fact that we have concluded the two offices are incompatible, we do not find it necessary to pass upon the question of public policy raised in the above cited case.

In the present case the court, as stated, found the two positions to be incompatible. It is not necessary to go further than to quote the following passage from the "Memorandum of Decision and Order for Findings" herein (*Estate of Yorba,* 176 Cal. 166 [167 P. 854] ; *Union Sugar Co.* v. *Hollister Estate Co.,* 3 Cal.2d 740 [47 P.2d 273]), relating solely to the subject of taxation, to affirm such finding: "In raising taxes for the district the directors fix a rate which is certified to the Board of Supervisors of each county uniting, and which the

supervisors levy upon the property in the county, the tax being collected by the tax officials of the county.

"Subdivision 6 of Section 10 of the Act of 1923 empowers the directors to fix and collect tolls, charges, rentals, and other rates of income for the purpose of meeting the obligations of the district and repaying the same and disposing of the surplus to the various counties within the district. Subdivision (e) of Section 21 provides that 'such surplus shall be divided by the Board of Directors and apportioned to each county or city and county within the district in the proportion which the assessed value of property within such county, city and county, or part of county within the district bears to the total assessed value of property within the district.'

"Conversely, any county in the district may demand its share of a surplus of district funds. While the power to make an audit is not expressly given to the respective counties forming the district, the right to its share of any surplus implies the right in a county to ascertain and determine the existence of such surplus. It is needless to say that the duty of protecting and enforcing this right rests upon the governing body of the county, the Board of Supervisors.

"Generally speaking, the directors are the agents of the county from which they are appointed, and the persons through whom the county acts in the affairs of the district. As pointed out, each county uniting in the district bears its share of the expenses of the district according to a rate ascertained by the directors and levied by the supervisors upon the property in the county. This rate, obviously, is based upon the amount of expense incurred by the directors. Should the directors operate the district at a profit, each county is entitled to share in the profit, or surplus as it is called. . . . In all district matters the county acts through its Board of Supervisors, and it is to the Board of Supervisors of his county that each director is held responsible by the terms of the Act." That the above finding indicating incompatibility is supported by authority, see *People ex rel. Chapman* v. *Rapsey, supra,* and citations therein. (See, also, *Thomas* v. *Abernathy County etc. School Dist.* (Tex. Com. App.), 290 S.W. 152; *Wells* v. *State ex rel. Peden,* 175 Ind. 380 [94 N.E. 321, Ann. Cas. 1913C, 86] ; *Cotton* v. *Phillips,* 56 N.H. 220; *State ex rel. Klick* v. *Wittmer,* 50 Mont. 22 [144 P.648] ; *State* v. *Buttz,* 9 S.C. 156; *Attorney General ex rel. Moreland* v. *Common Council of Detroit,* 112 Mich. 145 [70 N.W. 450, 37 L.R.A.

211]; *State ex rel. Sanders* v. *Blakemore,* 104 Mo. 340 [15 S.W. 960]; *State of Ohio* v. *McCollister,* 11 Ohio 46; *Taylor* v. *Johnson,* 148 Ky. 649 [147 S.W. 375]; *Kelly* v. *Woodlee,* 175 Tenn. 181 [133 S.W.2d 473, 135 S.W.2d 649].)

Respondent contends that the board of supervisors' power to remove a director does not render the offices in question incompatible, and cites cases to that effect. He also contends that the Legislature's failure to exclude certain classes of persons from appointment as directors indicates no manifest intent to restrict appointees to persons not members of the board of supervisors. In view of our conclusion that the duties of the two offices are incompatible in the matter of fixing tax rates and the disposition of moneys so procured, wherein a detriment to the public interest might result, it is not necessary to consider additional questions.

The question for determination is, which of the two offices respondent forfeited. It is not the performance, nor the prospective right of performance, of inconsistent duties only, that gives rise to incompatibility, but the acceptance of the functions and obligations growing out of the two offices. " ' "... a public office is said to be the right, authority, and duty, created and conferred by law—the tenure of which is not transient, occasional, or incidental—by which for a given period an individual is invested with power to perform a public function for public benefit." ' " (*People ex rel. Chapman* v. *Rapsey, supra,* p. 640.) The right to perform duties does not exist until there is at least tenure or term of office; that is, the right to perform the duties incidental thereto; tenure of office refers generally to the right to hold office subject to its termination by some contingency such as age limitation, resignation, death, removal, etc. "Tenure" is sometimes held to be synonomous with "term of office" (*Hunt* v. *Superior Court,* 178 Cal. 470 [173 P. 1097]), which ordinarily refers to a fixed period. (62 C.J. 714.) Until tenure in the sense of term of office exists, there can be no incompatibility of official duty for the simple reason that there is no " 'right ... and duty ... invested [by law] ... to perform a public function for public benefit'." (*People ex rel. Chapman* v. *Rapsey, supra.*)

One term of an office is separate and distinct from other terms of the same office. A proceeding for the removal of an officer cannot be maintained after the accused has ceased to hold his office, nor for a violation of his duty while serving

in another office or in another term of the same office. (*Thurston* v. *Clark*, 107 Cal. 285 [40 P. 435].) To be removed the officer must not only have qualified, but must be "acting." (*Edson* v. *Superior Court*, 98 Cal.App. 367 [277 P. 194].) A vacancy in office may occur by failure to comply with charter provisions of statutes (Pol. Code, §§ 907, 947, 996), but it does not occur until the tenure or term begins. Qualifying for an office by taking and filing the oath or filing a bond before the term of office actually commences is but a preliminary, although sometimes necessary, step to the final assumption of duties. The purpose of such mandatory provisions need not be discussed here. The preliminary performance of statutory requirements cannot vest one with the immediate right to perform the duties of the office, and until there is an authority to discharge the duties as an incumbent there can be no incompatibility of office. In *People* v. *Garrett, supra,* 455, the court said: "The rule is settled with unanimity that where an individual is an incumbent of a public office and, during such incumbency, is appointed or elected to another public office and enters upon the duties of the latter, the first office becomes at once vacant if the two are incompatible (Mechem on Public Officers, §419; 22 R.C.L., tit. 'Public Officers,' § 63)." (See, also, *Thurston* v. *Clark, supra; People ex rel. Chapman* v. *Rapsey, supra;* McQuillan Municipal Corporations (2d ed.) Revised vol. 2, § 469, p. 140.)

A statement appears in one of the briefs that Thompson at the time of his appointment as director was in fact supervisor under a previous term of office. The incompatibility of the two offices at that time is not raised on this appeal. We are concerned only with the office of director assumed by respondent on the 24th day of November, 1938, and the office of supervisor assumed on January 2, 1939. In consonance with the views expressed herein, the assumption of the office of supervisor terminated the incompatible office of director "as effectively as a resignation." (*People ex rel. Chapman* v. *Rapsey, supra,* p. 644.)

The judgment is reversed.

Peters, P. J., and Wagler, J. pro tem., concurred.

A petition for a rehearing was denied November 25, 1942, and respondent's petition for a hearing by the Supreme Court was denied December 22, 1942. Carter, J., voted for a hearing.