OFFICE OF THE ATTORNEY GENERAL
State of California

JOHN K. VAN DE KAMP
Attorney General

| | |
|---|---|
| OPINION | : |
| | : No. 90-691 |
| of | : |
| | : AUGUST 30, 1990 |
| JOHN K. VAN DE KAMP | : |
| Attorney General | : |
| | : |
| RODNEY O. LILYQUIST | : |
| Deputy Attorney General | : |
| | : |

WESLEY DAVIS has requested this office to grant leave to sue MICHAEL ALAN DAVIS pursuant to the provisions of Code of Civil Procedure sections 803-810. The proposed complaint alleges that Mr. Davis is unlawfully serving as a board member of the Victor Valley Union High School District.

CONCLUSION

Leave to sue is granted.

MATERIAL FACTS

On December 8, 1987, Mr. Davis was elected to the Board of Trustees of the Victor Valley Union High School District ("School District"). On November 14, 1989, Mr. Davis was elected to the Board of Directors of the Victor Valley County Water District ("Water District").

The School District has 10 water meters through which it receives water from the Water District. The Water District has a single rate that it charges its 14,000 customers. (Three customers pay a different rate for irrigation usage.)

In 1964 the Water District was granted an easement 10-feet wide on land owned by the School District for the purpose of constructing and maintaining a 6-inch water main. In 1964 the School District was granted a license on a strip of land 30-feet wide owned by the Water District for use as a parking lot.

All of the School District's water meters were installed prior to 1976. No "negotiations" between the School District and Water District have occurred since the last meter was installed. No negotiations of any type are contemplated. The School District trustees approve payment of the School District's monthly water bills.

1. 90-691

LEGAL ISSUE

The issue presented is whether the offices of School District trustee and Water District director are "incompatible" so as to cause a forfeiture of office for Mr. Davis as a School District trustee.

ANALYSIS

The statutory qualifications for being a school board member in California are that the person be "18 years of age or older, a citizen of the state, a resident of the school district, a registered voter, and . . . not disqualified by the Constitution or laws of the state from holding a civil office." (Ed. Code, § 35107; see 73 Ops.Cal.Atty.Gen. 191, 192 (1990).) The statutory qualification for being a county water district director is that the person "be a voter of the district." (Wat. Code, § 30500; see 72 Ops.Cal.Atty.Gen. 15, 21 (1989).)

Mr. Davis meets the qualifications for being a School District trustee and Water District director. No constitutional or statutory provision prohibits him from holding both offices at the same time. The only impediment to his doing so is the possible application of the common law doctrine against holding "incompatible offices."

The incompatibility of offices doctrine was explained by the Supreme Court in the landmark case of *People* ex rel. *Chapman* v. *Rapsey* (1940) 14 Cal.2d 636, involving a city judge who had accepted the appointment as city attorney. The court quoted from McQuillin on Municipal Corporations as follows:

"`Two offices are said to be incompatible when the holder cannot in every instance discharge the duties of each. Incompatibility arises, therefore, from the nature of the duties of the offices, when there is an inconsistency in the functions of the two, where the functions of the two are inherently inconsistent or repugnant, as where antagonism would result in the attempt by one person to discharge the duties of both offices, or where the nature and duties of the two offices are such as to render it improper from considerations of public policy for one person to retain both. The true test is whether the two offices are incompatible in their natures, in the rights, duties or obligations connected with or flowing from them.'" (*Id*., at pp. 641-642.)

The *Rapsey* analysis has been followed and applied by latter courts (see, e.g., *Mott* v. *Horstmann* (1950) 36 Cal.2d 388, 391-392; *People* ex rel. *Bagshaw* v. *Thompson* (1942) 55 Cal.App.2d 147, 150) and in opinions of this office (see, e.g., 68 Ops.Cal.Atty.Gen. 409, 413 (1984)) in a variety of circumstances.

We have previously stated that only one potential and significant clash of duties need be found to render two offices incompatible. In 63 Ops.Cal.Atty.Gen. 623 (1980), for example, the offices of city mayor and airport district director were found to be incompatible even though there were currently "no significant `interactions' between the city and the district." (*Id*., at p. 624.) We concluded that in many situations that would arise "`in the regular operation of the statutory plan,'" the person holding both offices would have "[t]he potential for significant clashes" of loyalties. (*Id*., at p. 627.)

If the two positions are "offices" and if they are "incompatible," the consequence is that "`the mere acceptance of the second incompatible office per se terminates the first office as effectively as a resignation.'" (*People* ex rel. *Chapman* v. *Rapsey, supra*, 16 Cal.2d 636, 644.)

In this case, Mr. Davis would forfeit the office of School District trustee if the doctrine were applicable.

A school board member holds an "office" (73 Ops.Cal.Atty.Gen. 183, 185 (1990); 68 Ops.Cal.Atty.Gen. 240, 241 (1985); 56 Ops.Cal.Atty.Gen. 488, 489 (1973)), as does a county water district director (41 Ops.Cal.Atty.Gen. 98, 101 (1963); 37 Ops.Cal.Atty.Gen. 21, 22 (1961)) for purposes of the incompatibility of offices doctrine. The only question, then, is whether the offices are incompatible. (*Mott* v. *Horstmann*, *supra*, 36 Cal.2d 388, 391-392; *People* ex rel. *Chapman* v. *Rapsey*, *supra*, 16 Cal.2d 636, 640-642.)

Looking at the duties and functions of a water district director and school district trustee to determine whether these two offices are incompatible, we find that a water district is statutorily empowered to "do any act necessary to furnish sufficient water in the district for any present or future beneficial use." (Wat. Code, § 31020.) "A district may establish rules and regulations for the sale, distribution, and use of water . . . ." (Wat. Code, § 31024.) "The district shall fix and through the general manager collect water rates." (Wat. Code, § 31025.) Water Code section 31026 provides:

> "A district shall have the power to restrict the use of district water during any emergency caused by drought, or other threatened or existing water shortage, and to prohibit the wastage of district water or the use of district water during such periods, for any purpose other than household uses or such other restricted uses as may be determined to be necessary by the district and may prohibit use of such water during such periods for specific uses which the district may from time to time find to be nonessential."

A county water district is authorized to contract with other public agencies concerning the control, distribution, and treatment of water, the construction of public works, the acquisition of property, and the joint operation of any property or public works. (Wat. Code, §§ 31048-31049.)

As for the duties of a school district trustee, in 73 Ops.Cal.Atty.Gen. 183 (1990) we recently detailed the numerous activities that a school district may statutorily undertake affecting a water district formed under the Community Services District Law. (*Id*., at pp. 186-188.) The same statutory authorities would be applicable with respect to activities that might affect a county water district.

In that recent opinion, we granted leave to sue in "quo warranto" to test the applicability of the incompatible offices doctrine. Based upon the function of the water district to supply water to the inhabitants of the district, we determined "that principal or important duties, functions, and responsibilities of the respective offices either are or might come into conflict." (*Id*., at p. 185.) We stated:

> " . . . defendant . . . is responsible for the fixing of rates for all users, including school districts, for prescribing different rates for different uses, and for assigning users into appropriate rate categories. In this regard, the exercise of his judgment and discretion as to the best interests of [the community services district] as a provider of services, and as to those of [the school district] as a ratepayer, is necessarily divided." (*Id*., at p. 186.)

Similarly, here, the potential exists for a significant clash of loyalties for Mr. Davis in deciding the water rates to be charged the school district and other water customers, the

possible range of restrictions on water usage during times of a water shortage, and the appropriate current and future uses of the property of one district by the other.

A "quo warranto" proceeding is proper to try title to office when the incompatibility of offices doctrine is applicable. (See *People* ex rel. *Chapman* v. *Rapsey*, *supra*, 55 Cal.App.2d 147, 148-149.) However, granting of a request to institute proceedings under Civil Code sections 803-810 is not always required. "The mere existence of a debatable legal issue . . . does not compel the bringing of the action; the guiding principle is one of serving the public interest when determining whether or not to grant leave to sue. [Citations.]" (73 Ops.Cal.Atty.Gen. 69, 70 (1990); see *City of Campbell* v. *Mosk* (1961) 197 Cal.App.2d 640, 650; 72 Ops.Cal.Atty.Gen. 15, 24 (1989); 72 Ops.Cal.Atty.Gen. 8, 10 (1989).) We recognize that "[a]mbiguities are to be resolved in favor of eligibility to office" (*Helena Rubenstein International, Inc.* v. *Younger* (1977) 71 Cal.App.3d 406, 418) and that allowing this proceeding to go forward "would discourage participation of citizens on public boards and commissions such as this water district board" (72 Ops.Cal.Atty.Gen. 15, 24 (1989)).

Nevertheless, we believe that it would be in the interests of the public to institute proceedings pursuant to Code of Civil Procedure sections 803-810 against Mr. Davis to test whether he holds incompatible public offices. It is a substantial question of law, and the public, the Water District, and the School District have an interest in its judicial resolution.

Speculating on how a court may ultimately resolve the question of incompatibility of offices with respect to Mr. Davis is not the function of the Attorney General. "In deciding whether or not to grant leave to sue, this office does not reach a determination concerning which party should or is likely to prevail before a court." (72 Ops.Cal.Atty.Gen. 15, 19 (1984).) As we observed in 12 Ops.Cal.Atty.Gen. 340, 341 (1949):

"In acting upon an application for leave to sue in the name of the people of the State, it is not the province of the Attorney General to pass upon the issues in controversy, but rather to determine whether there exists a state of facts or question of law that should be determined by a court in an action quo warranto; that the action of the Attorney General is a preliminary investigation, and the granting of the leave is not an indication that the position taken by the relator is correct, but rather that the question should be judicially determined and that quo warranto is the only proper remedy."

The application of Wesley Davis for leave to sue is granted in accordance with the provisions of Code of Civil Procedure sections 803-810.

* * * * *