WILLIAM M. WOODSIDE,    )

       Plaintiff/Appellant,   )

and     )

BILLY E. and MARY AGNITA   )
WOODSIDE, Grandparents,   )

       Plaintiffs,   )

   )   Davidson Probate
   )   No.  89D-95

VS.   )

   )   Appeal No.
   )   01-A-01-9503-PB-00121

SUSAN E. WOODSIDE (GILLEY), )

       Defendant/Appellee.   )

FILED

Oct. 20, 1995

Cecil Crowson, Jr.
Appellate Court Clerk

IN THE COURT OF APPEALS OF TENNESSEE

MIDDLE SECTION AT NASHVILLE


APPEAL FROM THE PROBATE COURT OF DAVIDSON COUNTY

AT NASHVILLE, TENNESSEE


HONORABLE JAMES R. EVERETT, JR., JUDGE


CLARK LEE SHAW
2525 Lebanon Road
Nashville, Tennessee  37214
ATTORNEY FOR PLAINTIFF/APPELLANT


KAREN CAIN
306 Gay Street
Suite 304
Nashville, Tennessee  37201

THOMAS F. BLOOM
500 Church Street
Fifth Floor
Nashville, Tennessee  37219
ATTORNEYS FOR DEFENDANT/APPELLEE


AFFIRMED AND REMANDED

          HENRY F. TODD
          PRESIDING JUDGE, MIDDLE SECTION


BEN H. CANTRELL, JUDGE, CONCURS AND
WILLIAM C. KOCH, JR., JUDGE,
CONCURS IN SEPARATE OPINION

WILLIAM M. WOODSIDE,                     )
                                         )
    Plaintiff/Appellant,             )
                                         )
 and                                     )
                                         )
BILLY E. and MARY AGNITA                 )
WOODSIDE, Grandparents,                  )
                                         )
    Plaintiffs,                      )
                                         )   Davidson Probate
                                         )   No.  89D-95
VS.                                      )
                                         )   Appeal No.
                                         )   01-A-01-9503-PB-00121
SUSAN E. WOODSIDE (GILLEY), )
                                         )
    Defendant/Appellee.              )

## O P I N I O N

This appeal arises from post-divorce decree proceedings to increase and enforce child support.  On October 11, 1994, the Trial Court entered an order finding the husband guilty of willful contempt, awarded the wife judgment for $10,054 arrears child support, increased weekly payments, awarded attorneys' fees and ordered the husband to be confined in the workhouse for six months.

On October 19, 1994, the husband filed a "Motion for New Trial and For Post-Conviction Relief."  On November 7, 1994, the Trial Court entered an order permitting the Tennessee Attorney General and Reporter and Child Support Services of Tennessee to intervene and respond to the motion for new trial and post-conviction relief.  A copy of said order was served upon the Tennessee Attorney General and Reporter, but the record contains no response from his office.

On December 2, 1994, the Trial Court overruled the motion for new trial and post-conviction relief.

On December 13, 1994, the husband filed a notice of appeal from the December 2, 1994, order.

On February 9, 1995, an "Agreed Order" was entered resolving all issues in the case except the validity of the six months sentence. The order stated:

> It is therefore ordered, adjudged and decreed by the Court that respondent's motion for a new trial be and is hereby denied by agreement of the parties in all respects except on the singular issue raised in <u>Young vs. U.S.</u>, as to whether the Court should set aside respondent's six month jail sentence for conviction of non-payment of child support under T.C.A. Section 36-5-104 and respondent's appeal shall be limited to that issue.
>
> It is ordered that the respondent shall remain free on bond pending determination of that limited issue and if he is unsuccessful on appeal, his sentence shall be computed to "time served" by agreement of the parties and approval of the Court.

On February 13, 1995, the husband filed an "Amended Notice of Appeal" stating:

> Notice is hereby given that William E. Woodside appeals to the Court of Appeals from the final judgment in this case in which Respondent's Motion for a New Trial and Post-Conviction Relief was heard on the 14th day of November, 1994 and from the order denying same of the Court was entered on the 2nd day of December, 1994. The last action of the trial court in this matter is an agreed order entered February 8, 1995.

On the same date, the husband filed a document entitled "Intended Issue on Appeal," stating:

> 1. Whether the Trial court abused its discretion when it allowed the Petitioner/Appellee to retain private counsel to prosecute criminal contempt contrary to the United States Supreme Court directives contained in *Young v. U.S.,* 481 U.S. 787, 107 S.Ct. 2124, 95 L.Ed.2d 740 (1987).

On the same date, the husband filed a notice that no transcript would be filed.

The single issue on appeal is that stated above.

It is clear from the technical record that the six months workhouse sentence was the result of a petition filed and prosecuted by private counsel for the wife, and that no public prosecutor had any part in the proceedings preceding the judgment of conviction and confinement.

The record contains no record of a request to any public prosecutor to prosecute the contempt petition. On the other hand, there is no evidence that no such request was made.

This Court has experienced some jurisdictional concern because of the fact that the judgment of the Trial Court imposes a sentence for criminal contempt (it contains no condition for release which would indicate "civil contempt"), and the post-judgment motion is denominated in part, a motion for "Post-Conviction Relief."

T.C.A. Title 40, Chapter 30, is entitled: "Post Conviction Relief." Section 40-30-122 reads as follows:

> **Appeal after final judgment. -** The order granting or denying relief under the provisions of this chapter shall be deemed a final judgment, and an appeal may be taken to the court of criminal appeals in the manner prescribed by the Tennessee Rules of Appellate Procedure. [Acts 1967, ch. 310, § 21; 1981, ch. 449, § 2; T.C.A. § 40-3822.]

However, Section 40-30-102 provides:

> **When prisoners may petition for post-conviction relief. -** A prisoner in custody under sentence of a court of this state must petition for post-conviction relief under this chapter within three (3) years of the date of the final action of the highest state appellate court to which an appeal is taken or consideration of such petition shall be barred. [Acts 1967, ch. 310, § 1; 1981, ch. 449, § 2; T.C.A., § 40-3802; Acts 1986, ch. 634, § 1.]

Even though the order in the present case might be a sentence for criminal contempt (See T.C.A. §29-9-103; 104; *Sherrod v. Wix,* Tenn. App. 1992, 849 S.W.2d 780; *Higgins v. Lewis,* 29 Tenn. App. 648, 137 S.W.2d 308(1939)), it appears that the motion for post-conviction relief was premature and could not be considered. The part of the motion for

evaluation in this appeal is the motion for new trial. The statute, T.C.A. 16-4-108, places jurisdiction in this Court over civil or criminal contempt arising out of a civil matter.

The sole issue presented on appeal is the applicability and effect of the decision of the Supreme Court of the United States in *Young, et al v. United States, ex rel., Vuitton Et Fils S.A., et al,* 481 U.S. 787, 95 L.Ed.2d 740, 1987. In the cited case, the defendants were convicted of criminal contempt by violating a permanent injunction against infringing a trade mark. At the request of counsel for the offended party, the Trial Court appointed private counsel to prosecute the complaint without consulting or designating the United States District Attorney to do so. The opinion of Justice Brennan, in which Justices Marshall, Blackmun and Stevens joined, stated:

> . . . If the Judiciary were completely dependent on the Executive Branch to redress direct affronts to its authority, it would be powerless to protect itself if that Branch declined prosecution. The logic of this request the appropriate prosecuting authority to prosecute contempt actions, and should appoint a private prosecutor only if that request is denied. Such a procedure ensures that the court will exercise its inherent power of self-protection only as a last resort.

> In practice, courts can reasonably expect that the public prosecutor will accept the responsibility for prosecution. Indeed, the United States Attorney's Manual § 9-39.318 (1984) expressly provides: "In the great majority of cases the dedication of the executive branch to the preservation of respect for judicial authority makes the acceptance by the U.S. Attorney of the court's request to prosecute a mere formality...." Referral will thus enhance the prospect that investigative activity will be conducted by trained prosecutors pursuant to Justice Department guidelines.

> In this case, the District Court did not first refer the case to the United States Attorney's Office before the appointment of Bainton and Devlin as special prosecutors. We need not address the ramifications of that failure, however. Even if a referral had been made, we hold, in the exercise of our supervisory power, that the court erred in appointing as prosecutors counsel for an interested party in the underlying civil litigation.

> . . . .

> . . . As we said in *Gompers,* criminal contempt proceedings arising out of civil litigation "are between the public and the defendant, and are not a part of the original cause." 221 U.S., at 445, 31 S.Ct., at 499. The prosecutor is appointed solely to pursue the public interest in vindication of the court's authority.

A private attorney appointed to prosecute a criminal contempt therefore certainly should be as disinterested as a public prosecutor who undertakes such a prosecution.

 . . . .

 Regardless of whether the appointment of private counsel in this case resulted in any prosecutorial impropriety (an issue on which we express no opinion), that appointment illustrates the *potential* for private interest to influence the discharge of public duty. . . .

 . . . .

 As we said in *Bloom*, "In modern times, procedures in criminal contempt cases have come to mirror those used in ordinary criminal cases."  391 U.S., at 207, 88 S.Ct., at 1485. The requirement of a disinterested prosecutor is consistent with that trend, since "[a] scheme injecting a personal interest, financial or otherwise, into the enforcement process may bring irrelevant or impermissible factors into the prosecutorial decision."

 The use of this Court's supervisory authority has played a prominent role in ensuring that contempt proceedings are conducted in a manner consistent with basic notions of fairness.  See *e.g., Cheff,* 384 U.S., at 380, 86 S.Ct., at 1526 (requiring jury trial for imposition of contempt sentences greater than six months); *Yates v. United States,* 356 U.S. 363, 366-367, 78 S.Ct. 766, 768-769, 2 L.Ed.2d 837 (1958) (reducing contempt sentence in light of miscalculation of number of offenses committed); *Offutt v. United States,* 348 U.S. 11, 13, 17-18, 75 S.Ct. 11, 13, 15, 99 L.Ed. 11 (1954) (contempt conviction reversed in case in which judge involved in personal conflict with contemner).  The exercise of supervisory authority is especially appropriate in the determination of the procedures to be employed by courts to enforce their orders, a subject that directly concerns the functioning of the Judiciary.  We rely today on that authority to hold that counsel for a party that is the beneficiary of a court order may not be appointed as  prosecutor in a contempt action alleging a violation of that order.

 The next question we must confront is whether the Government should have the opportunity to demonstrate that it was harmless error for the court to appoint counsel for an interested party as contempt prosecutor.  See *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). We have held that some errors "are so fundamental and pervasive that they require reversal without regard to the facts or circumstances of the particular case." *Delaware v. Van Arsdall,* 475 U.S. 673, 681, 106 S.Ct. 1431, 1436, 89 L.Ed.2d 674 (1986).  We find that the appointment of an interested prosecutor is such an error.

 . . . .

Furthermore, appointment of an interested prosecutor creates an appearance of impropriety that diminishes faith in the fairness of the criminal justice system in general. . . . A concern for actual prejudice in such circumstances misses the point, for what is at stake is the public perception of the integrity of our criminal justice system. "[J]ustice must satisfy the appearance of justice," *Offutt, supra,* 348 U.S., at 14, 75 S.Ct., at 13, and a prosecutor with conflicting loyalties presents the appearance of precisely the opposite. Society's interest in disinterested prosecution therefore would not be adequately protected by harmless-error analysis, for such analysis would not be sensitive to the fundamental nature of the error committed.

. . . .

. . . A prosecutor of a contempt action who represents the private beneficiary of the court order allegedly violated cannot provide such assurance, for such an attorney is required by the very standards of the profession to serve two masters. The appointment of counsel for Vuitton to conduct the contempt prosecution in these cases therefore was improper. Accordingly, the judgment of the Court of Appeals is Reversed.

*Young,* 107 S.Ct. at 2134-41.

Justice Scalia concurred on other grounds.

Justices Powell, Chief Justice Rehnquist and Justice O'Connor dissented stating that a remand was necessary to determine whether the error was harmless.

Justice White dissented, holding that there was no error in appointment of special prosecutors.

It appears that the 5 to 4 decision of the U.S. Supreme Court favors the position of the appellant/husband in the present case.

The next consideration must be whether the above quoted pronouncements are mandatory upon the Courts of Tennessee.

In some instances, decisions of the United States Supreme Court have been recognized as binding upon the Courts of Tennessee.

The Tennessee Supreme Court is bound by the interpretation given to the United States Constitution by the Supreme Court of the United States. U.S. Const. Art. 6, Ch.2; *Miller v. State,* Tenn. 1979, 584 S.W.2d 758; *Townsend v. Clover Bottom Hospital and School,* Tenn. 1978, 560 S.W.2d 623, cert.den., 98 S.Ct. 2854, 436 U.S. 948, 56 L.Ed.2d 790; *Roy v. Brittain,* 201 Tenn. 140, 297 S.W.2d 72 (1957); *State ex rel Sandford v. Cate,* 199 Tenn. 195, 285 S.W.2d 343; *Rowe Transfer & Storage Co. v. Int. Broth. Teamsters, etc.,* 186 Tenn. 265, 209 S.W.2d 35 (1948).

A decision of the Federal Supreme Court on a federal constitutional question is conclusive on the state courts. *Toncray v. Toncray,* 123 Tenn. 476, 131 S.W. 977, 34 L.R.A. N.S. 1106 anno.cas. 1912 C 284 (1910).

Whether a transaction by a foreign corporation is interstate commerce is a federal question which decisions by the Federal Supreme Court must be followed by state courts. *Lloyd Thomas Co. v. Grosvenor,* 144 Tenn. 347, 233 S.W.2d 669 (1921).

However, there are other areas in which decisions of the U.S. Supreme Court are not binding upon the Courts of Tennessee.

The Tennessee Supreme Court is not bound by a federal court decision on the subject of opinion evidence in a summary judgment proceeding. *Bowman v. Henard,* Tenn. 1977, 547 S.W.2d 527; *Smith v. Graves,* Tenn. App. 1984, 672 S.W.2d 787.

Federal decisions that frozen, uncooked meat is equivalent to fresh meat for tax purposes are not controlling in Tennessee Courts. *Robert Orr & Co. v. King,* 175 Tenn. 181, 133 S.W.2d 473 (1940).

United States Supreme Court decisions in *Wade* and *Gilbert* cases do not apply to state pre-indictment proceedings. *Harrison v. State,* Tenn. Cr. App. 1975, 532 S.W.2d 566.

Any doubt as to whether federal construction of federal rules of criminal procedure or Tennessee Common Law controls a question of procedure should be resolved in favor of Tennessee Common Law. *Vythoulkas v. Vanderbilt University Hospital,* Tenn. App. 1985, 693 S.W.2d 350.

A careful reading of the *Young* opinion fails to reveal any authoritative pronouncement based upon the Federal Constitution or a federal statute which would be applicable to the present case. The cited opinion must be regarded as being within the general supervisory powers of the United States Supreme Court over the federal judicial system and its procedures. Its rationale is public policy and public perception which are valid considerations for prescribing procedures in federal courts, but not a proper basis for considering a decision of the United States Supreme Court mandatory upon the courts of Tennessee.

This Court therefore does not consider the *Young* decision to be binding upon the Courts of Tennessee, and it will not be followed.

Whether the pronouncements of *Young* are to be adopted in Tennessee is a matter of public policy which must be determined by the Legislature or the Supreme Court of this State.

The judgment of the Trial Court is affirmed. Costs of this appeal are taxed against the appellant. The cause is remanded to the Trial Court for such further proceedings as may be necessary and proper.

Affirmed and Remanded.

_____
HENRY F. TODD
PRESIDING JUDGE, MIDDLE SECTION

_____
BEN H. CANTRELL, JUDGE, CONCURS

WILLIAM C. KOCH, JR., JUDGE,
CONCURS IN SEPARATE OPINION