EDMUND G. BROWN JR. Attorney General TAYLOR S. CAREY Deputy Attorney General
THE HONORABLE TOM HARMAN, MEMBER OF THE STATE SENATE, has requested an opinion on the following question:
Where voters are asked to dissolve an existing community services district and, in the same election, to establish a new city encompassing the same territory as the district and providing all services presently provided by the district, may an individual stand for election on the same ballot to both the existing district board of directors and the proposed city council?[1] *Page 2 
 CONCLUSION
Where voters are asked to dissolve an existing community services district and, in the same election, to establish a new city encompassing the same territory as the district and providing all services presently provided by the district, an individual may stand for election on the same ballot to both the existing district board of directors and the proposed city council, because only one of the two offices could exist after the election.
 ANALYSIS
Community services districts are a species of public agency, created by statute and designed to meet the public's need for facilities and services that "promote the public peace, health, safety, and welfare."[2]
The Rossmoor Community Services District (District) serves some 10,500 residents in an unincorporated area located within Orange County consisting of approximately 989 acres. In April of 2007, the District applied to the Orange County Local Agency Formation Commission (LAFCO) to incorporate as the City of Rossmoor.[3] The essential idea was to change Rossmoor from one kind of public agency into another, initially covering the same area and the same services, but ultimately *Page 3 
having different organizational principles and powers.[4]
Specifically, the application called for the entire area served by the District to be incorporated as the City of Rossmoor; for the new city to take over all administrative services previously provided by the District; and, upon incorporation, for the District to be dissolved, leaving no institutional or jurisdictional overlap between the District and the new city. In May of 2008, LAFCO approved the District's application for incorporation as the City of Rossmoor and the matter was placed on the ballot for voter approval in the November 4, 2008 election,[5] at which point it was rejected by the voters.
Although the 2008 proposal was not approved by the voters, a similar situation could recur, either in Rossmoor or elsewhere. The question has also been raised as to whether a dual candidate could have forfeited his or her existing office by standing for election to a second, allegedly incompatible office. Thus there remains more than an academic interest in the question whether one person may run for two potential public offices when both potential offices would govern the same responsibilities in the same area. We conclude that, under the described circumstances, a person may do so.
Elections Code section 10220.5 provides that, "Notwithstanding any other provision of law, a candidate shall not file nomination papers for more than one municipal office or term of office for the same municipality in the same election." Elections Code section 10223 provides that, "Each nomination paper shall be accompanied by a verified statement of the candidate that he or she will accept the *Page 4 
nomination, and will also accept the office in the event of his election." These provisions are consistent with those of Elections Code section 8040, which prescribes the requirements for a declaration of candidacy to be used by candidates for public office generally. Among other things, section 8040 requires candidates to declare that they will accept nomination, not withdraw, and, if nominated, will qualify for any office for which they stand as a candidate. Because a person who holds two incompatible offices is deemed as a matter of law to have forfeited one of them, [6] a candidate cannot truthfully file such a declaration for two incompatible offices. Thus it would appear that "one is effectively prohibited from being a candidate for two incompatible offices at the same election."[7] For the reasons that follow, however, we do not believe that the preclusive effects of sections 10220.5, 10223, and 8040 apply under the circumstances presented here.
Government Code section 1099 provides that one person "shall not simultaneously hold two public offices that are incompatible."[8]
Unless "expressly authorized by law," offices are incompatible when "[e]ither of the offices may audit, overrule, remove members of, dismiss employees of, or exercise supervisory powers over the other office or body;"[9] when "there is a possibility of a significant clash of duties or loyalties between the offices;"[10] or when "[p]ublic policy considerations make it improper for one person to hold both offices."[11] For the prohibition to apply, each of the two offices must be a *Page 5 
"public office," not merely "a position of employment,"[12] and there must be an "absence of statutes suggesting a contrary result."[13] In the event that two public offices are incompatible, the first office is deemed to have been forfeited upon accepting the second.[14] The rule does not require that an actual conflict exist before the offices may be considered incompatible; the mere possibility of a conflict is sufficient.[15]
In 2000 we addressed a situation involving the Elk Grove Community Services District and the new City of Elk Grove, which was similar in many respects to the situation presented here. The Elk Grove Community Services District encompassed an area of 130 square miles and provided a number of services, including fire protection, ambulance, and parks and recreation, to the residents of the District. The residents of an area of approximately 50 square miles located within the District filed an application with the appropriate LAFCO to incorporate as the City of Elk Grove. It was understood that, after incorporation, the Elk Grove Community Services District would continue to provide services to the remaining unincorporated area, as well as to the new city of Elk Grove. In addition, one or more of the District directors would also become members of the new Elk Grove city council. We concluded that, under the common law doctrine of incompatible offices, [16] the offices of community services district director and city council member were incompatible, and that the office of district director would be vacated automatically upon the commencement of the term of office on the city council.
In reaching that conclusion, we reasoned that, if the City of Elk Grove were to *Page 6 
undertake municipal functions that were already being provided by the Elk Grove Community Services District, a conflict of duties and loyalties could arise as to whether the services should be performed by the city or by the district and, in sorting out that conflict, what was best for the city might differ from what was best for the district.[17] Under the doctrine of incompatible offices, that potential clash of loyalties was enough to make the two offices incompatible.[18]
The difference between the situation in Rossmoor and the situation in Elk Grove, though seemingly slight, is material. In Elk Grove a geographical area within a community services district was to be incorporated, and the new city was to continue receiving services from the district. In Rossmoor, the entire area served by the Rossmoor Community Services District was to be incorporated, and upon incorporation the District was to be dissolved. Because the new City of Rossmoor would only come into being if the Rossmoor District ceased to exist, no conflict would or could ever arise between the two entities.
Consequently, candidates for both the District board of directors and for the Rossmoor city council did not violate their declarations of candidacy merely by filing for two seemingly overlapping offices. Under the doctrine of incompatible offices, the first office does not become vacant at the time of the filing, "but upon the actual assumption of the duties of the second office."[19] After the election, either the District or the new city would exist, but not both. Therefore there would never be a "second" office for any of the candidates to assume. "Until . . . the . . . term of office exists, there can be no *Page 7 
incompatibility of official duty for the simple reason that there is no `right . . . and duty . . . invested [by law] . . . to perform a public function for public benefit.'"[20] Thus, although candidates for the Rossmoor district board and the proposed Rossmoor city council may havefiled for both offices, they did so in the alternative, knowing that only one office could remain after the election. We believe, therefore, that in the absence of any potential for actual conflict arising between existing offices, the mere appearance of incompatibility (if any) prior to the election would not violate Government Code section 1099 or the representations required by Election code sections 10220.5, 10223 and 8040.
Accordingly, we conclude that where voters are asked to dissolve an existing community services district and to establish a new city encompassing the same territory as the district and providing all services presently provided by the district, an individual may stand for election on the same ballot to both the existing district board of directors and the proposed city council, because only one of the two offices could exist after the election.
[1] The questions originally presented for our consideration asked whether an individual could stand for election to the Rossmoor Community Services District board of directors and to the new City of Rossmoor city council on the same ballot, and whether that individual may hold bothoffices simultaneously. Because, in actuality, only a single office would remain after the vote on the proposed incorporation plan, we have rephrased the question to capture with greater accuracy the true nature of the inquiry.
[2] Govt. Code § 61001(a)(2).
[3] LAFCOs are administrative bodies created pursuant to the Cortese-Knox-Hertzberg Local Government Reorganization Act of 2000 (Govt. Code § 56000, et seq.) to control the process of municipality expansion. The primary function of LAFCO is "[t]o review and approve or disapprove with or without amendment, wholly, partially, or conditionally, proposals for changes of organization or reorganization" of local agencies. Govt. Code § 56375; see McBail Co. v. Solano CountyLocal Agency Formation Com., 62 Cal. App. 4th 1223, 1228 (1998); LasTunas Beach Geologic Hazard Abatement Dist. v. Superior Court,38 Cal. App. 4th 1002, 1007-1008 (1995). "Changes of organization" include city incorporations, district formations, annexations to or detachments from a city or district, disincorporations of cities, dissolutions of districts, and certain mergers and consolidations. Govt. Code § 56021.
[4] One difference between cities and special districts is that special districts tend to have more limited powers, because special districts may exercise only those powers conferred upon them by the Legislature. SeeLos Angeles Co. Flood Control Dist. v. S. Cal. Edison Co., 51 Cal. 2d 331,339-340 (1958); Turlock Irrigation Dist. v. Hetrick, 71 Cal. App. 4th 948
(1999); see generally People ex rel. City of Downey v. Downey Co. WaterDist., 202 Cal. App. 2d 796 (1962) (discussing distinction between cities and special districts).
[5] See "Resolution of the Local Agency Formation Commission of Orange County, California, Making Determinations, and Approving with Terms and Conditions the Incorporation of the City of Rossmoor" (copy on file with Cal. Office of Atty. Gen.).
[6] See 66 Ops.Cal.Atty.Gen. 293, 295 (1983).
[7] Keane v. Smith, 4 Cal. 3d 932, 942 (1971).
[8] Govt. Code § 1099(a).
[9] Id. at § 1099(a)(1).
[10] Id. at § 1099(a)(2).
[11] Id. at § 1099(a)(3).
[12] Id. at § 1099(c); see also 58 Ops.Cal.Atty.Gen. 109, 111
(1975).
[13] 38 Ops.Cal.Atty.Gen. 113 (1961); see Govt. Code § 1099(a);81 Ops.Cal.Atty.Gen. 344, 345 (1998); 78 Ops.Cal.Atty.Gen. 60, 62-63
(1995).
[14] Govt. Code § 1099(b).
[15] 63 Ops.Cal.Atty.Gen. 623, 624 (1980).
[16] The common law doctrine of incompatible offices has since been codified, without change, as Government Code section 1099.
[17] 83 Ops.Cal.Atty.Gen. 53, 55 (2000); see also80 Ops.Cal.Atty.Gen. 242, 245 (1997); 73 Ops.Cal.Atty.Gen. 183, 184
(1990); 63 Ops.Cal.Atty.Gen. 916, 921 (1980); 66 Ops.Cal.Atty.Gen. 383,384 (1983).
[18] 83 Ops.Cal.Atty.Gen. at 55.
[19] People ex rel. Kraemer v. Bagshaw, 55 Cal. App. 2d 155, 158
(1942); People ex rel. Bagshaw v. Thompson, 55 Cal. App. 2d 147,153-154 (1942); 83 Ops.Cal.Atty.Gen. at 55.
[20] People ex rel. Bagshaw, 55 Cal. App. 2d 147, 153 (citingPeople ex rel. Chapman v. Rapsey, 16 Cal. 2d 636 (1940)). *Page 1